Baldwin Township's Annexation.

Baldwin Township's Appeal.

Argued October 1, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW,
JJ.

*Henry A. Jones,* for appellants.—The state council of
education having disapproved the annexation, the de-
cree of the quarter sessions court annexing part of a
township to a contiguous city was without authority of
law: Mill Creek Twp. Annexation, 74 Pa. Superior Ct.
275; Prospect Park Boro. Election Dist., 296 Pa. 326;
Wilkins Twp. School Dist., 70 Pa. 108; Hunter v. Pitts-
burgh, 207 U. S. 161; Darby v. Sharon Hill, 112 Pa. 66.

The amendment of 1927 is constitutional: Com. v.
School Directors of Taylor Boro., 6 Lack. Jurist 116.

Annexation is a legislative, not a municipal function:
Smith v. McCarthy, 56 Pa. 359.

State council of education is not a special commis-
sion: Lansdown Boro. v. Pub. Ser. Com., 74 Pa. Supe-
rior Ct. 203.

If the amendment is unconstitutional, there is no legislative authority for the decree of annexation: Com. v. Potts, 79 Pa. 164; Pittsburgh's Petition, 138 Pa. 401.

Election held at polling places outside of the part of the township sought to be annexed is invalid: Com. v. Sarver, 44 Pa. Superior Ct. 441.

*Paul C. Ruffennach,* of *Ruffennach & Ruffennach,* with him *Charles A. Waldschmidt,* City Solicitor, *Thomas M. Benner,* First Assistant City Solicitor, and *John J. McGrath,* for appellees.—The Act of 1927, P. L. 161, is unconstitutional: O'Neil v. Ins. Co., 166 Pa. 72; West Phila. Boro., 5 W. & S. 283; Taylor v. Moore, 303 Pa. 469; Gill v. Scowden, 14 Phila. 626.

The amending act is incomplete and vests arbitrary power and discretion in the state council of education to determine what the law shall be in particular cases.

The Amending Act of Assembly of April 7, 1927, P. L. 161, offends article III, section 20, of the state Constitution, as delegating power to a special commission to supervise, interfere with and to perform a municipal function: Perkins v. Phila., 156 Pa. 554; Keeler v. Westgate, 10 Pa. Dist. R. 240; Com. v. Smith, 9 Pa. Dist. R. 350; Phila. v. Spangler, 9 Pa. D. & C. 577; Moll v. Morrow, 253 Pa. 442; Porter v. Shields, 200 Pa. 241; Stratton v. Allegheny Co., 245 Pa. 519; Junge's App., 89 Pa. Superior Ct. 548; Ward's App., 289 Pa. 458; Com. v. Woodring, 289 Pa. 437.

The election was valid although the polling places were outside the limits of the portion to be annexed: Howard Assn. App., 70 Pa. 344; Com. v. Gouger, 21 Pa. Superior Ct. 217; Devore's App., 56 Pa. 163; Turbett Twp. v. Boro., 33 Pa. Superior Ct. 520.

*Charles A. Woods, Jr.,* and *Dickie, Robinson & McCamey,* for intervenor, League of Boroughs, Townships and Cities of the third class of Allegheny County, under Rule 61.

Opinion by Mr. Justice Maxey, December 4, 1931:

This case was certified to us by the Superior Court in pursuance of the Act of 1895, P. L. 212. That court held that in a proceeding for the annexation of part of a township to a contiguous city under the Act of April 28, 1903, P. L. 332, amended by the Act of April 7, 1927, P. L. 161, though a majority of the township electors voted for annexation, an annexation decree by the court of quarter sessions was not lawfully made when the state council of education disapproved in writing of that annexation.

The township challenges the constitutionality of the act making as a prerequisite to such annexation the approval in writing of the state council of education. It is claimed that this proviso offends article II, section 1, of the Constitution, which reads as follows: "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives." The township contends that the approval of the state council of education is a legislative act, which the legislature has no power to delegate.

In the case before us there is no delegation of legislative functions. The function of the legislature is to make laws. The word "law" has been often defined; by this court it has been defined as follows: "The word 'law' has a fixed and definite meaning. In its general sense it imports 'a rule of action'": Baldwin v. City of Phila., 99 Pa. 164. Webster's New International Dictionary defines the word "rule" as: "A prescribed guide for conduct or action; government direction; a regulation." This court held in O'Neil et al. v. Ins. Co., 166 Pa. 72, 77, that the law with all its provisions and its penalties must be complete when it leaves the legislature. The court held in the same case that the legislature can delegate to the electors of a certain locality the determination of the question when the law shall become operative in that locality and that the submission of such a question does not amount to a delegation of legislative power because, as the court said, "No provision or

requirement of the law was left to be supplied in order to make it complete in all its parts, but the vote of the electors served to give expression to their wish in reference to the subjection of the locality they represented to its already finished provisions."

We have many examples of the legislature laying down certain laws or guides of conduct and action making the operativeness of the law dependent upon the consent of certain localities or individuals. For example, the marriage law provides that a clerk of the orphans' court can issue a marriage license to a minor applicant only when the consent of the parents or guardians of such minor is first obtained. The giving of such consent cannot be classed as a legislative act. Likewise the Voting Machine Law of 1929 provides that voting machines must be used in certain subdivisions of the Commonwealth if the voters in these subdivisions decide by a vote that they are to be so used. The law provides further that the county commissioners of the proper county can purchase only the kind of voting machines the secretary of the Commonwealth has approved of. This decision of the electors of the locality effected and this approval by the secretary of the Commonwealth are clearly not delegations of legislative functions by the legislature. Many similar examples could be cited of the legislature enacting a law which does not become operative until certain electors or certain officers give their consent to its becoming operative. In the national government we have many examples of Congress enacting laws which go into effect only upon the order of the executive or some commission as, for example, the tariff commission. A legislature, state or national, can no more delegate its functions to the executive than the executive can delegate his functions to the legislature, but the examples cited are not delegations of legislative functions.

In Locke's App., 72 Pa. 491, Justice AGNEW, with his customary clarity, said: "The legislature cannot dele-

gate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power; and must, therefore, be a subject of inquiry and determination outside of the halls of legislation. ...... If a determining power cannot be delegated, then there can be no power delegated to city councils, commissioners, and the like, to pass ordinances, by-laws and resolutions in the nature of laws, binding and affecting both the persons and property of the citizens. If a determining power cannot be conferred by law, there can be no law that is not absolute, unconditional and preëmptory."

It is clear that the legislature has the same constitutional right to confer the power now questioned, on the state council of education, as it has to confer upon a parent the right to say whether a marriage license shall issue to that parent's minor child or to confer upon the secretary of the Commonwealth the right to say what kind of voting machines shall be used by the Commonwealth or to confer upon the voters in the respective counties the right to say whether or not voting machines shall be used in those counties. We have long been accustomed to the grant of authority to electors of a district to vote on a question of the annexation of that district to another municipal subdivision and in former days upon the question of whether liquor licenses should be granted in certain localities. The legislature has exactly the same constitutional right to grant the state council of education the power to consent to the annexation of a district as it has to confer such power upon the entire electorate of that district. The question whether a grant of authority is a grant of power to make laws does not depend upon the number of persons to whom the authority is granted; it depends upon the nature of

the power granted. If the grant of authority is not a delegation of power to make a law but merely investing some official or group of electors with discretion in putting the law into effect in a certain situation, it can as constitutionally be granted to the state council of education as it can be to the electors of the district affected. In disapproving a proposed annexation of a part of a township to a city, the state council of education is not making a law; it is simply doing something officially to make nonoperative in a specific instance an annexation law which if the state council had given its approval would be operative in that particular instance. There are many analogies to this in our system of laws.

It is also contended that this act offends article III, section 20, of the Constitution, which reads as follows: "The General Assembly shall not delegate to any special commission, private corporation, or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever." The answer to this is that the state council of education is not herein attempting "to make, supervise or interfere with any municipal improvement, money, property or effects, or to levy taxes or perform any municipal function whatever." In view of this fact we do not need to discuss the question of what constitutes a "special commission" within the meaning of article III, section 20, of the Constitution.

The objections to the authority of the council to exercise the power conferred upon it by statute to approve or disapprove in writing of the annexation of part of a township to a contiguous city, seem to be based fundamentally upon the belief that the conferring by the legislature of this power upon this council is unwise. In cases of this kind courts do not pass upon legislative wisdom but upon legislative power.

The judgment of the Superior Court is affirmed.

Dissenting Opinion by Mr. Chief Justice Frazer:

I am not in accord with the majority opinion filed in these two appeals. The provisions of the Act of April 7, 1927, P. L. 161, amending the Act of April 28, 1903, P. L. 332, under which the otherwise valid annexation of a portion of Baldwin Township, Allegheny County to the adjoining City of Pittsburgh, is being struck down because the state council of education, a board appointed by the governor, has not given its approval, is patently unconstitutional in that it permits the withholding of such approval to bar the desired annexation. Article III, section 20, of the state Constitution expressly restricts the legislature from delegating municipal functions to special commissions; it provides that "The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever." The whole tenor and prescription of the Act of 1903, which expressly provides that notice of the proposed annexation shall be given the city's chief executive, and permission for annexation shall, if granted, emanate from the city's council in the form of an ordinance, render the permissive part of annexation proceedings very definitely a "municipal function." In granting its permission, the City of Pittsburgh, in the present case, performed a municipal function whose effect, in scope and purview, was infinitely larger than consideration of annexation of schools and school districts could possibly entail. In so far as the amendment of 1927 allows refusal of approval by the state council of education to invalidate the annexation now before us, and, in so doing, operate outside of the very limited field in which the council of education has a right to act, it violates article III, section 20, above referred to. Inasmuch as the amendment of 1927 permits the council of education to overstep its proper field

of activity and veto the political and governmental aspects of an annexation under the Act of 1903, in any and all cases, it should be declared unconstitutional. The definition and authority of the state council of education is contained in the Act of May 20, 1921, P. L. 1014, 1016 et seq. amending the School Code. That act may be searched in vain for authority justifying the council in "legislating" against proposed annexations such as the one here before us. The state council of education, under the law defining that body and its powers, is obviously an improper arbiter, outside of school considerations, of annexations under the Act of 1903.

The amendment of 1927 provides "that in proceedings for the annexation of part of a township no decree of annexation shall be entered until the state council of education, after due inquiry into the consequent effect upon the school districts affected, shall approve in writing of the proposed annexation." The amendment does not provide that annexation proceedings shall terminate or legally conclude the proposed annexation if the education council withholds its approval. The word used is "until," not "unless." It is also apparent that the amendment does not specify a time at which the council of education shall act, does not prescribe the effect of its disapproval, does not provide for appeal from its decision or even require it to report its decision to any official or lawful body. The delegation by the legislature to the council of education of the ultimate decision—obviously discretionary—in approving or disapproving annexations may, therefore, be seriously questioned, first as to propriety under sections 1 and 20, article III, of the Constitution, and irrespective of propriety, then, as to mode, manifestly the delegation is loose, general and indefinite to such extent as to render the legislation ineffective.

As stated in the dissenting opinion filed in the Superior Court in this case by Judge KELLER and concurred in by President Judge TREXLER, "a council whose powers

are limited to the public school system can exercise no valid authority over the functions of municipalities and quasi-municipalities, apart from school affairs." Clearly the questions for determination by the council of the City of Pittsburgh, to which annexation was proposed, were "apart from school affairs." Since the council of education is here authorized to exercise "special and unusual power" exceeding its ordinary functions and to perform a function "alien" both to it and to the lawfully prescribed duties of the municipality (in annexation proceedings) and which is over and above school considerations, therefore the empowering act is unconstitutional and should be so declared by this court.

For the above reasons, I enter my dissent.